UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

FELICIA GRAY                                    DOCKET NO. 6:10-cv-1591
on behalf of J.L.G.

VERSUS                                          JUDGE HAIK

MICHAEL J. ASTRUE,                              MAGISTRATE JUDGE HANNA
COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION


# REPORT  AND  RECOMMENDATION


Before the Court is an appeal of the Commissioner's finding of non-disability.

Considering the administrative record, the briefs of the parties, and the applicable

law, it is recommended that the Commissioner's decision be AFFIRMED and this

matter be DISMISSED WITH PREJUDICE.


## BACKGROUND AND THE COMMISSIONER'S FINDINGS

On August 11, 1008, Felicia Gray filed an application for Supplemental

Security Income benefits and any other applicable benefits available under Title XVI

of the Social Security Act for her son, J.L.G,[1] who was born on July 14, 2007,[2] and

---

[1]      Rec. Doc. 7-6 at 2.

[2]      Rec. Doc. 7-3 at 14; Rec. Doc. 7-6 at 2.

who is now four years of age.  The application for benefits alleges a disability onset date of July 14, 2007[3] and is based upon J.L.G. allegedly having chronic asthma.[4]

Upon initial determination, the Commissioner denied the application on September 18, 2008.[5]  Mrs. Gray requested a hearing,[6] which was held on September 18, 2009 before Administrative Law Judge ("ALJ") Steven C. Graalmann.[7]  At that time, J.L.G. was two years old.  The ALJ rendered an unfavorable decision on November 3, 2009.[8]  Mrs. Gray requested review of that decision, and on August 20, 2010, the Appeals Council denied her request.[9]  Accordingly, the ALJ's decision is the Commissioner's final decision for purposes of judicial review.[10]

Mrs. Gray now argues that J.L.G.'s asthma meets a listing and qualifies him for Social Security benefits.

---

[3]     Rec. Doc. 7-6 at 2.

[4]     Rec. Doc. 7-7 at 6, 26.

[5]     Rec. Doc. 7-5 at 2.

[6]     Rec. Doc. 7-5 at 8.

[7]     The transcript of the hearing is contained in the record at Rec. Doc. 7-3 at 21-31.

[8]     Rec. Doc. 7-3 at 11-20.

[9]     Rec. Doc. 7-3 at 2.

[10]     42 U.S.C. § 405(g).

## ASSIGNMENT OF ERRORS

Mrs. Gray argues that J.LG.'s condition meets Listing 103.03, the listing for asthma. She claims that the Commissioner's ruling is erroneous because it did not conclude that J.L.G.'s asthma renders him disabled.

## STANDARD OF REVIEW

This Court's review of the Commissioner's decision that the claimant is not disabled is limited to determining whether the decision was supported by substantial evidence and whether the proper legal standards were applied in reaching the decision.[11] If the Commissioner's findings are supported by substantial evidence and the decision comports with relevant law, the decision must be affirmed.[12] Substantial evidence is more than a mere scintilla and less than a preponderance.[13] A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision.[14] Finding substantial evidence does not involve a search of the record for isolated bits of evidence that support the

---

[11]    42 U.S.C. § 405(g); *Alfred v. Barnhart*, 181 Fed. App'x 447, 449 (5th Cir. 2006); *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001).

[12]    *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

[13]    *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d at 135.

[14]    *Boyd v. Apfel,* 239 F.3d at 704.

Commissioner's decision; instead, the entire record must be scrutinized as a whole.[15] The court may not re-weigh the evidence or substitute its judgment for that of the Commissioner.[16]  A claimant has the burden of proving his disability.[17]

## CHILDHOOD DISABILITY BENEFITS

An individual under age eighteen is considered to be disabled if he has a medically determinable physical or mental impairment, which results in marked and severe functional limitations and can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months.[18]

A three-step process is utilized to determine whether a person under the age of eighteen is disabled.[19]  At step one, it must be determined whether the claimant is engaging in substantial gainful activity.  A child claimant who is engaging in substantial gainful activity will be found not disabled regardless of his medical condition, age, education, or work experience.[20]

---

[15]   *Singletary v. Bowen*, 798 F.2d at 823.

[16]   *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d at 135.

[17]   See *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).

[18]   42 U.S.C. § 1382c(a)(3)(C)(I); 20 C.F.R. § 416.906.

[19]   20 C.F.R. § 416.924; *Lopez v. Barnhart*, 176 Fed. App'x 618, 619 (5th Cir. 2006).

[20]   20 C.F.R. § 416.924(b).

-4-

At step two, it must be determined whether the claimant has a medically determinable severe impairment or a combination of impairments that is severe.  A child found to have a slight abnormality or a combination of slight abnormalities that cause no more than minimal functional limitations will be found to be not disabled.[21]

At step three, it must be determined whether the claimant has an impairment or combination of impairments that meets or medically equals the criteria of a listing or that functionally equals a listing.[22]  When the impairments do not meet or equal a listed impairment, the Commissioner will evaluate the functional limitations caused by the child's impairments to determine whether they are disabling.[23]

## DISCUSSION

In his ruling, the ALJ followed the required three-step sequential process for determining whether J.L.G. is disabled.  At step one, the ALJ found that J.L.G. had not engaged in substantial gainful activity at any relevant time.[24]  This finding is supported by the record, which establishes that J.L.G. was only four years old at the

---

[21]     20 C.F.R. § 416.924(c).

[22]     20 C.F.R. § 416.972.

[23]     20 C.F.R. § 416.926a.

[24]     Rec. Doc. 7-3 at 14.

time.  The record contains no evidence that he ever engaged in significant physical or mental activities for pay or profit.[25]

At step two, the ALJ found that J.L.G.'s asthma is a severe impairment.[26]  This, too, is supported by the evidence in the record, which establishes that J.L.G. has been diagnosed with asthma,[27] has been to the emergency room two or three times because of his asthma,[28] has had numerous doctor's visits because of coughing, wheezing, and other symptoms associated with asthma,[29] and has taken a variety of prescription medications for his asthma.[30]  The ALJ did not err in concluding that J.L.G.'s asthma is a severe impairment.

At step three, the ALJ found that J.L.G. does not have an impairment or combination of impairments that meets or equals a listing.[31]  It is undisputed that J.LG. has been diagnosed with asthma, but being diagnosed with asthma is

---

[25]    20 C.F.R. § 416.972.

[26]    Rec. Doc. 7-3 at 14.

[27]    Rec. Doc. 7-10 at 13.

[28]    Rec. Doc. 7-3 at 27; Rec. Doc. 7-8 at 3.

[29]    Rec. Doc. 7-8 at 6-24; Rec. Doc. 7-9 at 4-11; Rec. Doc. 7-10 at 10-20.

[30]    Rec. Doc. 7-7 at 32-34.

[31]    Rec. Doc. 7-3 at 39.

insufficient to satisfy the requirements of Listing 103.03, the listing for asthma.[32] "In order to meet a listed impairment, a claimant must manifest all of the specified criteria of a particular listing to qualify for disability under that listing."[33]

Listing 103.03 sets forth the criteria to establish a disability due to asthma in a child.  In order to meet the criteria, a claimant must provide evidence to show that he meets or equals one of four types of medical evidence:  (1) a forced expiratory volume (FEV1) equal to or less than a value specified in Table I of 103.02A; (2) attacks despite prescribed treatment and requiring physician intervention, occurring at least once every 2 months or at least six times a year; (3) persistent low-grade wheezing between acute attacks or absence of extended symptom-free periods requiring daytime and nocturnal use of sympathomimetic bronchodilators with either persistent prolonged expiration with radiographic or other appropriate imaging techniques with evidence of pulmonary hyperinflation or peribronchial disease or short courses of corticosteroids that average more than five days a month for at least three months during a twelve-month period; or (4) growth impairment.[34]

---

[32]    See *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (a claimant must manifest all of the specified criteria of a particular listing to qualify for disability under that listing).

[33]    *Mason v. Astrue*, No. 09-851-BAJ-CN, 2011 WL 2882492, *2 (M.D. La. May 20, 2011), citing *Sullivan v. Zebley*, 493 U.S. at 530.

[34]    20 C.F.R. Pt. 404, Subpt. 1, § 103.3(A)-(D).

In this case, the record contains no laboratory results establishing a forced expiratory volume.  Therefore, there is no evidence satisfying Listing 103.03(A).

J.L.G. is a triplet, and his mother testified that he was smaller than the other two at the time of the hearing.[35] But this is inadequate to establish that his growth has been impaired by his asthma.  The record contains no medical evidence of growth impairment.  Therefore, Listing 103.03(D) is not satisfied.

With regard to Listing 103.03(C), the record contains no imaging studies or evidence that corticosteroids were needed to treat persistent wheezing, averaging more than five days a month for at least three months during a twelve-month period. The record contains documentation of thirty-one doctor's visits for J.L.G. between August 13, 2007 and July 30, 2009.[36]  Wheezing is noted at ten of those visits, on December 10, 2007, April 15, 2008, May 1, 2008, June 16, 2008, July 6, 2008, July 18, 2008, September 8, 2008, November 7, 2008, December 2, 2008, and December 8, 2008,[37] but no information is provided to establish how many days the wheezing persisted.  It was merely noted that wheezing was present when J.L.G. was examined

---

[35]     Rec. Doc. 7-3 at 30.

[36]     Rec. Doc. 7-8 at 6-24; Rec. Doc. 7-9 at 4-11; Rec. Doc. 7-10 at 10-20.

[37]     Rec. Doc. 7-9 at 4, 5, 7, 10; Rec. Doc. 7-8 at 7, 10, 11, 18; Rec. Doc. 7-9 at 34; Rec. Doc. 7-10 at 16.

-8-

on those dates.  Consequently, the claimant failed to establish "[p]ersistent low-grade wheezing between acute attacks or absence of extended symptom-free periods."[38]

Mrs. Gray also failed to establish "an absence of extended symptom-free periods requiring daytime and nocturnal use of sympathomimetic bronchodilators" or "[s]hort courses of corticosteroids that average more than five days a month for at least 3 months during a 12-month period."[39]  There is no evidence to show that J.L.G. required sympathomimetic bronchodilators both during the day and also at night for extended periods, and there is no evidence to show J.L.G. required corticosteroid medication as frequently as stated in the listing.

Although Mrs. Gray argues that filling prescriptions for Xopenex, a sympathomimetic bronchodilator, eight times over a twenty-four month period satisfied the listing,[40] Dr. Gunda's and Dr. Joseph's notes indicate that Xopenex was prescribed on an "as needed" basis.[41]  This is supported by the claimant's statement that Xopenex is used "as a rescue devise [sic] as needed."[42]  The medical records do

---

[38]     20 C.F.R. Pt. 404, Subpt. 1, § 103.3(C).

[39]     20 C.F.R. Pt. 404, Subpt. 1, § 103.3(C).

[40]     Rec. Doc. 10 at 4.

[41]     See, e.g., Rec. Doc. 7-8 at 7, 10, 11; Rec. Doc. 7-10 at 10.

[42]     Rec. Doc. 10 at 5.

not support Mrs. Gray's claim that J.L.G. had daily doses of Albuterol,[43] another sympathomimetic bronchodilator.  Furthermore, the record does not indicate that Albuterol was prescribed for daily use nor does the record indicate that any bronchodilator was prescribed for extended use during the day and also at night.

The claimant also asserts that filling prescriptions for Prednisone ten times over a twenty-month period satisfies the listing.[44]  Mrs. Gray testified at the hearing that "a number of times" steroids such as Pulmicort and Prednisone have been prescribed by Dr. Atley.[45]  But Dr. Atley's medical records are not included in the record, and Mrs. Gray's testimony falls short of establishing that steroids were prescribed for more than five days per month in at least three months during a twelve-month period. Furthermore, a letter from Dr. Bina Joseph, a specialist in pediatric and adult allergy, asthma, and clinical immunology, dated June 16, 2008, stated that J.L.G. had been prescribed oral steroids only about three times for three to five days at a time.[46]  The evidence presented by Mrs. Gray is insufficient evidence to establish that Listing 103.03(C) is satisfied.

---

[43]    Rec. Doc. 10 at 4.

[44]    Rec. Doc. 10 at 4.

[45]    Rec. Doc. 7-3 at 29.

[46]    Rec. Doc. 7-10 at 12.

Mrs. Gray also fails to establish that J.L.G.'s asthma satisfies Listing 103.03(B).  Mrs. Gray argues that "[t]he need for repeated emergency medical intervention meets the listing."[47]  But that is simply not the case.  The listing requires evidence of asthma attacks despite prescribed treatment and requiring physician intervention, occurring at least once every two months or at least six times a year. The word "attack" is defined as "prolonged symptomatic episodes lasting one or more days and requiring intensive treatment, such as intravenous bronchodilator or antibiotic administration or prolonged inhalational bronchodilator therapy in a hospital, emergency room or equivalent setting."[48]  J.L.G. was hospitalized in December 2008 for pneumonia.[49]  But there is no evidence that he has ever been hospitalized for asthma.  In fact, Dr. Joseph's letter of June 16, 2008 states: "He has never been hospitalized with wheezing."[50]  No emergency room records are in the record, but Mrs. Gray testified at the hearing that J.L.G. has been seen in the emergency room for asthma on two or three occasions, and this same information was set forth in Dr. Joseph's letter of June 16, 2008.[51]  There is no evidence establishing

---

[47]     Rec. Doc. 10 at 5.

[48]     20 C.F.R. Pt. 404, Subpt. P, App. 1, § 3.00C.

[49]     Rec. Doc. 7-9 at 4; Rec. Doc. 7-10 at 11.

[50]     Rec. Doc. 7-8 at 3.

[51]     Rec. Doc. 7-3 at 27; Rec. Doc. 7-8 at 3.

other hospitalizations or emergency room visits after the date of Dr. Joseph's letter. Therefore, there is insufficient evidence to establish the number or frequency of asthma attacks necessary to satisfy the listing.

The listing for asthma in a child can be satisfied in four different ways.  In this case, however, the claimant failed to establish that J.L.G.'s asthma satisfies the listing under any of the four alternative criteria.   Therefore, the Commissioner's determination that J.L.G. does not have an impairment or combination of impairments that meets or medically equals a listed impairment is supported by substantial evidence of record.

The ALJ also analyzed whether J.L.G. has an impairment or combination of impairments that functionally equals a listed impairment, and he concluded that he does not.[52]

To show that his impairments are functionally equal to a listed impairment, a child claimant must establish that he has a "marked" limitation in two broad areas of functioning, also known as "domains," or an "extreme" limitation in one domain.[53] A marked limitation in a domain exists when the impairment interferes seriously with

---

[52]     Rec. Doc. 7-3 at 14.

[53]     20 C.F.R. § 416.926a.

-12-

the claimant's ability to independently initiate, sustain, or complete activities.[54]  A marked limitation is more than moderate but less than extreme.[55]  An extreme limitation in a domain exists when the impairment interferes very seriously with the claimant's ability to independently initiate, sustain, or complete activities.[56]

The domains used to assess childhood disability are:  (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving around and manipulating objects; (5) caring for oneself; and (6) health and physical well being.[57]

In his ruling, the ALJ reviewed the evidence presented regarding J.L.G.'s functioning in each of the six domains.  He concluded that J.L.G. has no limitation in five of the domains: acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, and the ability to care for himself.  The claimant was only two years old at the time of the hearing.  Other than a developmental delay in expressive communication,[58] he appears to be on par with his age group.  There is no indication in the record that the

---

[54]     20 C.F.R. § 416.926a(e)(2)(I).

[55]     20 C.F.R. § 416.926a(e)(2)(I).

[56]     20 C.F.R. § 416.926a(e)(3)(I).

[57]     20 C.F.R. § 416.926a(a)(1)(i)-(vi).

[58]     Rec. Doc. 7-9 at 36.

developmental delay is related in any way to J.L.G.'s asthma nor was the developmental delay identified as a basis for seeking Social Security benefits.

In the final domain, health and physical well-being, the ALJ found that J.L.G. has a marked limitation.[59]  This conclusion was based on the fact that J.L.G. has asthma, which is controlled by medication, goes to day care, has been hospitalized once and been treated at the emergency room approximately three times.  This conclusion was correct because there is no contrary evidence in the record.

The Fifth Circuit has held that a "medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling."[60]  The most recent medical records are reports from Dr. Joseph based on her examinations of J.L.G. on January 5, 2009[61] and July 30, 2009.[62]  In the earlier report, Dr. Joseph noted that J.L.G. has a history of chronic rhinitis, eczema, asthma, and a questionable milk allergy but is "currently doing well."  At that time, he was taking Pulmicort, Singulair, and Albuterol.  Dr. Joseph's report states: "Currently taking Pulmicort

---

[59]      Rec. Doc. 7-3 at 20.

[60]      *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987).  See also *Epps v. Harris*, 624 F.2d 1267, 1270 (5th Cir. 1980) (conditions controlled or controllable by treatment are not disabling).

[61]      Rec. Doc. 7-10 at 11.

[62]      Rec. Doc. 7-10 at 10.

b.i.d. and Singulair and doing well." The only reasonable interpretation of this statement is that his illnesses were being controlled by the prescribed medications.

The later report contains similar information. At that time, J.L.G. was taking an antibiotic for an ear infection, Xopenex, and a skin cream for his eczema. Her assessment was that, since the January 2009 appointment, J.L.G. "is generally much better."

These reports from Dr. Joseph support the ALJ's conclusion that J.L.G.'s asthma is controlled by medication. The ALJ's conclusion that J.L.G. has failed to prove that his asthma resulted in marked impairments in at least two domains or an extreme impairment in at least one domain is supported by substantial evidence in the record. The claimant offered no argument or evidence to support a contrary conclusion.

The determination of a disability is a legal conclusion within the Commissioner's scope of authority.[63] In this case, the Commissioner did not err in finding that J.L.G. is not disabled.

---

[63]    *Frank v. Barnhard*, 326 F.3d 618, 620 (5th Cir. 2003).

-15-

## CONCLUSION AND RECOMMENDATION

The undersigned fully reviewed the entire record on this matter, finds that the Commissioner did not err as a matter of law in reaching the final decision in this matter, finds that the Commissioner applied the proper legal standards in reaching the decision, and finds that the decision was supported by substantial evidence. Accordingly,

**IT IS THE RECOMMENDATION** of the undersigned that the Commissioner's decision be affirmed and this matter be dismissed with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds

of plan error.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415

(5th Cir. 1996).

Signed in Lafayette, Louisiana, this 12th day of September 2011.

Patrick J. Hanna
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)